UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:18-cv-00172-KDB
(5:18-cr-00005-KDB-DCK-1)

| | |
|---|---|
| MICHAEL CLARENCE HOOD, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

**I.     BACKGROUND**

On February 13, 2018, Petitioner Michael Clarence Hood ("Petitioner") was charged in a Bill of Information with two counts of possession with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts One and Two); and one count of possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) (Count Three). [CR Doc. 16: Bill of Information]. The parties reached a plea agreement pursuant to which Petitioner agreed to plead guilty to all three counts. [CR Doc. 18 at ¶ 1: Plea Agreement]. The Government agreed not to oppose a sentence at the bottom end of the applicable guidelines range at sentencing. [Id. at ¶ 8(e)].

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 5:18-cv-00172-KDB, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 5:18-cr-00005-KDB-DCK-1.

[Id.].  Petitioner stipulated that there was a factual basis for his guilty plea, that he had read it and understood it, and that the factual basis could be used by the Court and the United States Probation Office to determine the applicable advisory guideline range or the appropriate sentence under 18 U.S.C. § 3553(a).  [Id. at ¶ 15].  Petitioner also agreed that the factual basis was true and accurate and did not object to any provisions therein.  [See CR Doc. 17: Factual Basis].  The factual basis provided as follows:

> 1. In January 2015, law enforcement conducted three controlled purchases of controlled substances from [Petitioner] at his residence [in] Lenoir, North Carolina.  That led to law enforcement obtaining a search warrant for [Petitioner's] residence.  When they executed the search warrant on January 21, 2015, they located, among other things, approximately $4,052.90 in U.S. currency, 0.54 grams of cocaine base ("crack cocaine"), 45 Oxycodone pills (10 mg each), and 13 firearms and ammunition.
>
> 2. Within three days of October 16, 2017, law enforcement conducted a controlled purchase of a controlled substance from [Petitioner] at his residence [in Lenoir, North Carolina].  They then obtained a search warrant and executed it on October 16, 2017, seizing approximately $1,000 in U.S. currency from [Petitioner's] wallet, 5 pills of Oxycodone, 69 pills of Hydrocodone (10 mg each), and two firearms and ammunition.  Additionally, two individuals who were on scene at [Petitioner's] residence admitted that they had been purchasing controlled substances from him.
>
> 3. [Petitioner] possessed the controlled substances with intent to distribute and possessed the firearms in furtherance of drug trafficking.

[Id. at 2].

    Petitioner pleaded guilty in accordance with the plea agreement.  At the plea and Rule 11 hearing, Petitioner testified that he understood that he was under oath and required to give truthful answers to the questions asked by the Court.  [CR Doc. 20 at ¶ 1: Acceptance and Entry of Guilty Plea].  Petitioner testified that he was not under the influence of alcohol, medicines or drugs of any

2

sort. [Id. at ¶ 6]. Petitioner further testified that his mind was clear and that he understood that he was there to enter a guilty plea in his case. [Id. at ¶ 7]. The Court reviewed the charges and their minimum and maximum penalties. [CR Doc. 41 at 4-7, 12-14: Plea Hearing Tr.]. Petitioner testified that he understood the charges and the penalties and had discussed them with his attorney. [Id. at 7, 14; CR Doc. 20 at ¶¶ 8, 9]. Petitioner confirmed that he was, in fact, guilty of the charges to which he was pleading guilty. [Doc. 20 at ¶ 24].

Counsel for the Government described the terms of the plea agreement. [CR Doc. 41 at 17-20]. After the Government reviewed the terms of the plea agreement, Petitioner testified that he had been over the agreement carefully with his attorney, that he understood it, and that he agreed to its terms. [Id. at 20-21; CR Doc. 20 at ¶ 26]. Petitioner also attested that he had reviewed the factual basis with his attorney and that he had either read it or had it read to him, understood it, and agreed to it. [CR Doc. 20 at ¶ 31; CR Doc. 41 at 21-22]. Petitioner specifically testified that he was "satisfied with the services of [his] lawyer in this case" and declined the opportunity to state anything to the Court regarding the services of his attorney. [Id. at ¶¶ 35-36; CR Doc. 41 at 23]. The Court then asked Petitioner's counsel if she "had reviewed with [Petitioner] all features of his case but in particular the terms of his plea agreement" and whether she was "satisfied he understands these things and knows what he's doing." [CR Doc. 41 at 23]. Counsel responded, "I have and I do." [Id. at 23]. Thereafter, the Court found that Petitioner's guilty plea was "knowingly and voluntarily made" and "that [Petitioner] understands the charges, and the potential penalties and consequences of his plea." [Id. at 24]. The Magistrate Judge then accepted Petitioner's guilty plea. [CR Doc. 20 at 4].

Before Petitioner's sentencing, a probation officer prepared a Presentence Investigation Report (PSR). [CR Doc. 28: PSR]. The probation officer recommended a Total Offense Level

3

Case 5:18-cv-00172-KDB   Document 11   Filed 07/10/20   Page 3 of 12

(TOL) of 13 and a Criminal History Category of I, yielding a guidelines range of 12 to 18 months' imprisonment followed by a mandatory minimum statutory term of imprisonment of 60 months on Count Three. [Id. at ¶¶ 13, 35, 60, 61].

Petitioner's sentencing hearing was held on July 11, 2018. [CR Doc. 39: Sentencing Tr.]. At the sentencing hearing, Petitioner testified that he was pleading guilty freely and voluntarily, that he was "fully satisfied" with the services of his attorney, and that he was guilty of the offenses to which he pleaded guilty. [Id. at 3-4]. The Court adopted the PSR without objection and noted the guideline range of a term of imprisonment of 12 to 18 months on Counts One and Two and the consecutive term of 60 months on Count Three. [Id. at 5]. At the sentencing hearing, Petitioner's counsel informed the Court, in pertinent part, as follows:

> [Petitioner] suffered from severe learning disabilities throughout his life. He repeated several grades in school, had a speech impediment; he was actually in Special Ed classes from the First Grade on throughout all of school. He has limited reading and writing abilities and is effectively illiterate. Throughout my course of representing him I have had to read every legal document and email to him so that he could understand it.
>
> The document I filed with the Court notes [Petitioner] has a Full Scale IQ of 52, which is in the mentally retarded range, and was the basis for him being on disability through much of his life. Outside of this case, [Petitioner] relies significantly on his family members to help with basic tasks in his life due to his limited intellect and, also, his [illiteracy].

[Id. at 6-7]. Counsel also advised the Court that Petitioner is extremely involved in the lives of his two sons, picking them up form school every day, spending the weekends with them, and taking them to every ball game he can. [Id. at 7]. After noting that Petitioner "had the capacity and ability to deal drugs," the Court sentenced Petitioner to a term of imprisonment of 12 months on Counts One and Two, to be served concurrently, and a term of 60 months on Count Three, to be served consecutively to the terms imposed for the other counts. [Id. at 15, 17]. Judgment on Petitioner's

conviction was entered on July 11, 2018. [CR Doc. 31: Judgment]. Petitioner did not directly appeal his conviction or sentence.

On October 18, 2018, Petitioner timely filed the instant motion to vacate under § 2255. [CV Doc. 1]. As grounds for his § 2255 motion, Petitioner claims he received ineffective assistance of counsel because his attorney did not investigate Petitioner's mental disability before advising the Magistrate Judge that Petitioner was competent to plead guilty. [CV Doc. 1 at 4]. Petitioner also claims his attorney was incompetent for failing to investigate "the effect [of] the combination of previous use of psychiatric drugs, current prescribed use of Oxymorphone (Opana ER), use of crack cocaine, and the consumption of alcohol/beer would have upon [Petitioner's] ability to reason and understand the nature of the proceeding." [Id. at 5]. Finally, Petitioner claims that his attorney "failed to investigate the nexus between the alleged drug sale and firearm possession pursuant to 18 U.S.C. § 924(c)(1)(A)." [Id. at 6]. In the space provided for the fourth ground for relief, Petitioner states that he is "legally incompetent" and seeks "an order to remove counsel … and appoint anew." [Id. at 8]. Petitioner does not claim innocence or request a trial. Rather, he requests that the forfeiture be stayed, for a mental evaluation, and to vacate his convictions. [CV Doc. 1 at 12].

The Government, on this Court's Order, timely responded to Petitioner's motion to vacate after receiving multiple extensions of time to do so. [CV Docs. 3, 5, 7, 8]. Petitioner then filed a letter with the Court directed to Honorable Frank W. Whitney, United States District Judge, purporting to be a reply to the Government's response. [CV Doc. 9]. In the letter, Petitioner "seeks an order from this Honorable Court to stay the 28 U.S.C. § 2255 proceedings until the Court

decide[s] whether counsel will be appointed to assist [Petitioner]." [Id.]. On March 18, 2020, S. Frederick Winiker, III, filed a notice of appearance as counsel for Petitioner.[2] [Doc. 10].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364,

---

[2] Because counsel has appeared for Petitioner, any purported motion by Petitioner for counsel or to stay the proceedings is moot and will not be addressed further.

369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United

7

Case 5:18-cv-00172-KDB   Document 11   Filed 07/10/20   Page 7 of 12

States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

### A. Mental Disability

Petitioner argues that he received ineffective assistance because his attorney did not investigate Petitioner's mental disability, including the effect of Petitioner's drug and alcohol use on his competency, prior to his guilty plea. Petitioner, however, does not allege that his guilty plea was unknowingly or involuntarily made or that he was mentally incompetent, that he could not assist his counsel, or that he did not understand the proceedings against him. Rather, Petitioner alleges that he has a low IQ and that the PSR noted that he had been intellectually disabled since 1994. [CV Doc. 1 at 4]. Petitioner's conclusory assertions are insufficient to establish a claim of mental incompetence. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations). Further, the record of the plea hearing demonstrates that Petitioner's guilty plea was knowing and voluntary. What is more, Petitioner confirmed the validity of his guilty plea at sentencing. As such, Petitioner has waived these pre-plea claims of ineffective assistance.

Even if Petitioner had not waived these claims, they are meritless. A defendant is not incompetent if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding … [and] a rational as well as factual understanding of the proceedings against him." Cooper v. Oklahoma, 517 U.S. 348, 354 (1996) (internal citation and quotation marks omitted). See Burket v. Angelone, 208 F.3d 172, 192 (4th Cir. 2000) ("Likewise, neither low intelligence, mental deficiency, no bizarre, volatile, and irrational behavior can be equated

with mental incompetence to stand trial."). "To show incompetence to plead guilty, a defendant must demonstrate that 'his mental faculties were so impaired … when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea.'" Roach v. Martin, 757 F.2d 1463, 1480 (4th Cir. 2012) (quoting Shaw v. Martin, 733 F.2d 304, 314 (4th Cir. 1984)).

Petitioner does not allege that he did not understand the charges, his guilty plea, or the plea proceedings. And the record of the plea and sentencing proceedings provide no support for such an argument in any event. Petitioner responded appropriately to all questions posed to him and gave no indication of confusion or that he did not understand the proceedings. He testified that his mind was clear, that he was not under the influence of any drugs, and that he understood the proceedings. Petitioner's attorney represented that she was satisfied that Petitioner understood the proceedings. Petitioner's low IQ and relative mental disability do not equate to mental incompetence in a criminal proceeding. See Burkett, 208 F.3d at 192. Moreover, the record shows that Petitioner managed to sell drugs, collect and possess firearms, and take care of his children. As such, Petitioner has not shown that his counsel was constitutionally deficient for allegedly failing to investigate his mental competency.

Furthermore, Petitioner has not shown there was an objectively reasonable probability for him to have proceeded to trial but for his counsel's alleged errors. In fact, Petitioner does not even request a trial. As such, Petitioner has not shown prejudice. See Meyer, 506 F.3d at 369.

In sum, Petitioner has failed to show deficient performance and prejudice as to his claims for ineffective of assistance of counsel related to his mental disability.

9

Case 5:18-cv-00172-KDB   Document 11   Filed 07/10/20   Page 9 of 12

### B. Firearm Nexus

To support an ineffective assistance claim based on the failure to investigate, a petitioner must present specific information to show what favorable evidence the investigation would have yielded. See Beaver v. Thompson, 93 F. 3d 1186, 1195 (4th Cir. 1996). If there is "no reasonable probability that a possible defense would have succeeded at trial," counsel's failure to investigate such a defense is not prejudicial. See Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996).

A § 924(c) offense requires "that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime." United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002). A firearm may further drug trafficking in several ways, including defending against someone trying to steal drugs or profits or facilitating the collection of money for drugs. Id. Many factors may be considered in determining whether a sufficient nexus between the firearm and the drug trafficking exists. Id. These include "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." Id. (internal quotation and citation omitted).

Petitioner possessed 152 Oxymorphone pills, 69 Hydrocodone pills, five Oxycodone pills, $1,000.00 in cash, two firearms and ammunition at the time law enforcement searched his residence on October 16, 2017. [CR Doc. 28 at ¶ 10]. The firearms were found in the same location as the drugs, both at the house where Petitioner conducted drug sales, and while two people who had admittedly purchased drugs from Petitioner were present. These facts demonstrate a sufficient nexus between the firearms and the drugs to support a § 924(c) charge. See United States v. Lynn, 37 F.3d 1496, at *5 (4th Cir. 1994) (unpublished) (affirming § 924(c) conviction

where a firearm was locked in a safe and unloaded and another firearm was hidden and relatively in accessible).

Petitioner contends that, when he was prescribed Oxymorphone, he was instructed to keep the pills in a safe place. [CV Doc. 1 at 6]. He claims, therefore, by storing the Oxymorphone in a safe with his guns, the presence of the firearms was coincidental and did not further the drug offense. [Id. at 6-7]. This assertion is conclusory and insufficient to establish deficient performance or prejudice. See Dyess, 730 F.3d at 359-60. Additionally, this assertion contradicts Petitioner's testimony that he possessed the firearm in furtherance of drug trafficking. Other than Petitioner's claim that the possession of the firearms was coincidental, he presents no evidence of what an investigation of the nexus would have revealed. Proceeding to trial based on such a defense would have been objectively unreasonable. Petitioner, therefore, has failed to show both deficient performance and prejudice relative to the firearm/drug trafficking nexus.

In sum, because Petitioner cannot show deficient performance or prejudice, his ineffective assistance claims will be dismissed. See Strickland, 466 U.S. at 687-88

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, including any motion for counsel or to stay the proceedings, [Doc. 1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of

appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: July 10, 2020

Kenneth D. Bell
United States District Judge